value of the securities by the deposition of the partner making the proof of debt, that he "has been informed and believed," that the security of the two mortgages is not worth beyond the sum of $50,000; and that, although the value of these securities may prove to be more or less hereafter, the "estimate" made in this way is sufficient for the purposes of adjusting the amount on which the firm may be admitted to vote for assignee.

I do not consider this position tenable. The twentieth section of the act [of 1867 (14 Stat. 526)] seems to me to clearly determine this point, in saying: "When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon, for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct." The mortgages themselves were to the extent of $300,000, to cover loans and advances; and, as these loans and advances had not equaled the amount stated as that security, I am of opinion that A. T. Stewart & Co. can be 'admitted as a creditor," under this proof of debt, only in the amount of $25,000 and interest, for the notes and drafts of the first class stated; and that the indebtedness stated of the second class must rest in abeyance until the value of the securities stated are ascertained in the manner provided for in the section quoted.

Mr. Hilton, for A. T. Stewart & Co.
Mr. Kursheedt, for Edward S. Innes.

BLATCHFORD, District Judge. I concur with the register in his views.

[In Case 6,026 a special order was made appointing the register special custodian of the property put up for sale under the mortgages to A. T. Stewart & Co.]

HANNA (ROCKHILL v.). See Cases Nos. 11,979 and 11,980.

## Case No. 6,028.

### The HANNAH.

[Cited in The Harmony, Case No. 6,081. Nowhere reported; opinion not now accessible.]

## Case No. 6,029.

### HANNAH et al. v. The CARRINGTON.

[2 West. Law Month. (1860) 456.]

District Court, N. D. New York.

MARITIME LIEN—PERFORMANCE OF CHARTER-PARTY.

1. Under the general maritime law, the vessel is ordinarily bound to the cargo, and the cargo to the vessel, for the performance of the usual stipulations of the contract of affreightment; but that law gives no lien on a vessel as a security for the performance of a charter party, or a contract for the transportation of a cargo, until some lawful contract of affreightment is made, and property shipped in pursuance thereof.

[Cited in The Pauline, Case No. 10,848; The R. G. Winslow, Id. 11,736; Scott v. The Ira Chaffee, 2 Fed. 407.]

2. The cases of The Aberfoyle [Case No. 17] and The Pacific [Id. 10,643] commented upon and considered as overruled by the case of Vandewater v. Mills, 19 How. [60 U. S.] 82.

The libel in this case was filed [by Perry Hannah and others against the schooner Carrington, her tackle, apparel, and furniture, and against John Lane, claimant] for the recovery of damages alleged to have been sustained by the violation of a charter-party, or memorandum of charter, made between the libellants and certain part-owners and agents of the Carrington. By the terms of the charter, the vessel was to carry the libellants' freight, of the kind designated, at specified rates, during the season of navigation. It is alleged by the libel, that the part-owners and agents of the Carrington—finding that she could earn more freight and make greater profits by sending her to Buffalo—about the first day of October, and during the period for which she was so chartered, without the libellants' leave, and in direct violation of the charter-party, withdrew her from the trade for which she had been so chartered, and refused any longer to employ her under such charter. It also alleges that freights were then high, and that the libellants were compelled, in consequence of such refusal, to employ other vessels, at higher rates of freight: and that they were, besides, prevented from bringing to Chicago a large quantity of lumber which they then had at Grand-Traverse-Bay; by which they had sustained damages to the amount of $1,800. The claimant, by his answer, insisted, among other things, that the libellants had no lien upon the vessel, even upon the case made by the libel; and by arrangement between the parties, this question was argued without the production of evidence upon the issues of fact made by the answer.

HALL, District Judge. It can hardly be necessary to say, that this suit, being a proceeding in rem, can not be maintained, unless the libellants have a maritime lien, or some other lien or privilege against, or upon, the vessel. As general creditors, however meritorious, they can not proceed against the Carrington in this form of action; and as they have not alleged in their libel, or suggested upon the argument, that they have any lien other than the lien or privilege given by the general maritime law, it is only necessary to consider whether, under that law, they have any privilege against the vessel. Upon this point, the libellants' counsel relied upon the following cases: The Volunteer [Case No. 16,991]; Drinkwater v. The Spartan [Id. 4,085]; The Rebecca [Id. 11,619]; Clark v. Crabtree [Id.